Price, C. J.
There is nothing in the petition which was held bad on demurrer, to indicate that the chattel mortgage confers any special powers, such as power to sell or make other disposition of the mortgage property. As our statement of the case shows, the petition describes certain notes executed and delivered by Franz Kraft to the plaintiff Lingler, and that to secure their payment as *234 each should become due, the mortgage was executed and delivered to the payee of the notes. It was properly verified and filed in order to perfect the intended lien on the personal property described therein. In addition to the facts alleged as to creation of the lien by virtue of this mortgage, it is averred “and that thereby the said property was conveyed to this plaintiff by said Franz Kraft.”
The other material provision of the mortgage is the written condition, that if said Kraft should pay or cause to be paid when due each of the several notes described in the mortgage, then it was to be void; otherwise to remain in full force.
The second mortgage referred to in the petition, given at a later date to secure the payment of a note for twenty-five hundred dollars, covers the same property and contains similar conditions. It may be inferred from the language of the petition, that Kraft paid some of the notes, but he died on the 7th day of March, 1904 — less than a year from the date of the notes and mortgage, at which time notes due in six, seven, eight, nine, ten and eleven months respectively, had matured. His wife, Florentine Kraft, became administratrix of his estate, and on April 15, 1904, Lingler brought suit in replevin against the administratrix to recover possession of the mortgaged property, and in pursuance- of the provisions of the statute of which he availed himself, he obtained possession.
As before stated, the petition discloses no condition upon which the mortgagee might take possession save the averment that by the execution *235 of the mortgage Kraft thereby conveyed the mortgaged property to Lingler who thus acquired a special ownership therein. Evidently this personal property remained in the possession of the mortgagor and was in his possession at the. time of his death. What change, if any, in the relation of the mortgagee to- this property was wrought by the death of the mortgagor ?
It is not claimed that death discharged or in any degree weakened the lien of lingler, but he was not satisfied with holding his lien and permitting the administratrix to sell and administer upon the proceeds, and therefore asserted title under his mortgage and charged ’ that the administratrix wrongfully and illegally detained the property from him. The lower court decided that he could not maintain replevin against the administratrix and assessed damages against him for the value of the goods replevied.
Death soon or later is the certain fate of all men, and when a party accepts a mortgage upon chattels securing the payment of a series of notes some of which will not mature for many months, as was the case here, such party must be held to take such security in contemplation of what the law may require if death prevents the mortgagor from complying with the terms of his contract. The value of mortgaged property might be far in excess of the debt, and the estate of the deceased mortgagor would in such case be largely interested in the proper and advantageous disposition of the same, and it would seem unfair to the estate, that a mortgagee should be permitted to arbitrarily take possession and keep or dispose *236 of the property as he please. The petition discloses no duty on the part of the mortgagee in respect to such property. It does not appear that he was authorized by the mortgage to sell at either public or private sale, nor does it appear what shall be done with the proceeds in case a sale should be made.
But aside from the lack of averment of what powers were conferred by the mortgage in question, we still have the question, what change occurs in the rights of a mortgagee on the death of the mortgagor? — not change in his contract lien, but change in the remedy to enforce it. Indeed, on the facts alleged in the petition in the present case, it can not be fairly urged that the decision of the lower court tended to impair any of the contract rights of the mortgagee. He contracted for a lien to secure his notes. Death did not remove or impair the lien, but we think it did so change the relation of the parties that the remedy by replevin, which might have been enforced in the lifetime of the mortgagor, is not available when the mortgaged property passes into the custody of the administratrix. The new situation does not dissolve the contract relation or impair the contract, but cuts off one of the remedies that could have been pursued against the mortgagor. Hence, 'it is not correct to say, that unless the mortgagee may take the property from the personal representative of the mortgagor, he does not enjoy the full measure of his contract rights. His rights as to the debt and its security may be one thing, and the remedy to enforce them may be another. The former may not be changed *237 by the death of a party, while the other may necessarily be affected.
While the statute provides the method of obtaining a valid lien on personal property by mortgage, and one which was adopted by Lingler in this case, other provisions provide for the sale and distribution of personal property after the death of the owner. Section 4163, Revised Statutes, provides that: “When a person dies intestate and leaves any personal property, such personal property shall be distributed in the manner prescribed in section forty-one hundred and fifty-nine,” etc. This section points out the course of descent and distribution. But there are still other provisions to be observed after death of the owner of personal property. It is the subject of administration, and Section 6006, Revised Statutes, requires a bond of the administrator, one of the conditions of which is to make and return into court on oath within three months, a true inventory of all moneys, goods, chattels, rights and credits of the deceased which have or shall come to his possession or knowledge. The statute requires the administrator to administer according to law all the moneys, goods and chattels, etc. These are some of the duties of an administrator as to personal property of the deceased which comes into his possession or of which he has knowledge, and these duties are primary, or first duties in discharge of the trust. Later it is the duty and power to sell the personal estate and make due return of the same. In this case, some interest in the mortgaged property vested in the administrator, the extent of which depends upon *238 its value as compared with the amount of valid liens, and the contract called the chattel mortgage, “must be expounded according to the laws in force at the time they are made, and the parties are as much bound by a provision contained in the law, as if that provision had been inserted in, and formed part of, the contract.” Lindemann v. Ingham, 36 Ohio St., 1.
Applying this rule to the case at bar, we think the chattel mortgage and Lingler’s rights under it must be expounded and determined with a proper recognition of the statutes regulating the settlement of estates of deceased persons, and that the mortgagee should not be allowed to supplant administration under the law, and take upon himself the administration on part of the estate. These provisions by statute for the administration of estates must be regarded as in contemplation of the parties who enter into such contracts, and they must be interpreted and enforced accordingly. And the mortgagee is not made to suffer by this method of procedure, for under Sections 6090 and 6091, Revised Statutes, which prescribe the order in which the administrator shall pay debts, his lien is preserved and recognized, and as said in Section 6091: “Nothing in the preceding section shall affect or impair any lien, legal or equitable, which any creditor or other person shall have upon the personal estate of' the deceased during his lifetime.” Hence, to this extent at least, the administrator is a trustee for the benefit of the mortgagee as well as other creditors of the deceased.
In Kilbourne et al. v. Fay, Exr., et al., 29 Ohio *239 St., 264, the relation which the administrator sustained to creditors was under consideration, although it was not the paramount question in the case. The syllabus indicates the nature of the controversy: “Where a chattel mortgage is declared void by the statute ‘as against the creditors of the mortgagor,’ and the mortgagor dies in possession of the mortgaged property, leaving an insolvent estate, such property becomes assets in the hands of the executor or administrator of the mortgagor, whose duty, as well as right, it is to defend his possession against the claim of the mortgagee, notwithstanding such mortgage was valid as against the mortgagor.”
It is not claimed that the mortgage in the present case is void as to creditors, or as to the mortgagor, but the pertinent principle found in that case is, that the administrator is a trustee for the benefit of the creditors of the estate. In the course of the opinion, on page 279, Mcllvaine; J., says: “I shall not stop to cite cases wherein the executor or administrator has been held to be a trustee for the benefit of the creditors of the estate. The provisions of the 83d section of the administration act above quoted, clearly establishes such relation. (Said Section 83 is now 6091, Revised Statutes.) The ordinary course of administration is the means and process provided by law whereby creditors of a deceased debtor receive payment. It is true that in the case of a solvent estate, the heir has also a beneficiary interest in the trust as a distributee, but where the estate is insolvent, the interest of the heir is merely technical, as all the assets in such *240 case are administered for the exclusive benefit of creditors. The analogy between the duties • of the office of an administrator of an insolvent estate and those of an assignee of an insolvent debtor are so perfect that we might at once affirm that the doctrine of Hanes v. Tiffany must control the decision of the present case.”
The perfect analogy mentioned is reinforced when we consider the duties of an assignee of an insolvent debtor defined by Section 6351, Revised Statutes: “The probate court shall order the payment of all incumbrances and liens upon any of the property sold, or rights and credits collected, out of the proceeds thereof, according to priority.”
This being the relation which an administrator sustains to the creditors of the estate of a deceased person, the case of Lindemann v. Ingham, 36 Ohio St., 1, becomes direct authority. It is not necessary to here restate the facts of that case. It was an action against Lindemann for conversion of goods and chattels covered by a chattel mortgage, which goods the assignee sold with full knowledge of the mortgage, which instrument was the title of the mortgagee. This court held that, “where a mortgagor in possession of goods mortgaged, makes an assignment thereof for the benefit of' his creditors, and the assignee proceeds in the probate court to administer the trust in accordance with the statutes regulating such assignments, the mortgagee can not maintain an action against the assignee for converting the property to his own use. In such case, his interest in the property under the mort *241 gage, where the assignee is clothed with authority to sell the goods, is transferred to the fund arising from the sale by the assignee. And it will make no difference that the condition in the mortgage was broken at the time of the assignment/’ In the case at bar the mortgagee sued in replevin after condition broken, and thus gained possession of the property.
This court had occasion to again consider the question decided in Lindemann v. Ingham, supra, in Ingham v. Lindemann, 37 Ohio St., 218. The doctrine of the first case was adhered to and it has been quoted with approval by this court in several subsequent cases, and we think it has become the settled law of this state.
The plaintiff in error complains of the judgment assessing the damages. The judgment entry shows the following: “And thereupon this cause came on to be heard on said demurrer to said petition, and the court having heard the argument of counsel and being fully advised in the premises, does find that said demurrer is well taken and does sustain the same at the costs of the plaintiff and does render judgment on said demurrer against the plaintiff and in favor of defendant; and _ on application of the defendant herein filed the court proceeded to assess proper damages to the defendant, the court finding that said defendant as administrator of Franz Kraft at the time the property described in plaintiff’s petition and replevined from her by said plaintiff had the right of possession thereof for the purpose of administering the same according to law as administrator of said estate, and the court being fully advised *242 does find that the value of the property described in the petition at the time it was replevined, was $2,565.65 and does assess the damages caused to the defendant by said plaintiff replevining said property from her, at $153.83.” The court then rendered judgment for the aggregate of the two amounts and costs of the action.
Before the demurrer was filed it seems that some issue had been made up by answer and reply, for the record shows that the defendant had leave to withdraw the answer and the plaintiff to withdraw the reply. Thus the deck was cleared for a demurrer to the petition, which was filed, and the right of plaintiff to maintain replevin against the administrator was thereby challenged. The question was decided on the demurrer against the right of replevin. The plaintiff did not ask permission to amend his pleading and he was in possession of the property replevined. It does not appear that either party demanded a jury to assess the damages, and for what we know, they may have waived a jury, for the record is silent on the subject. The entry shows that the court made a finding in favor of defendant and against the plaintiff on the demurrer, and that defendant was entitled to possession of the property when suit was brought, and then the court proceeded to find the value of the property at the time of replevin, and assessed its value as the measure of damages. Such a finding presupposes the introduction of evidence, and where the record is silent, a reviewing court will presume that the court below, being one of general jurisdiction, *243 acted upon evidence to support the finding of value and amount of damages.
Therefore it appears' that no one objected to the court hearing the evidence and passing upon it. No one asked for a jury, but the parties proceeded with a submission of the case. The condition of the record here warrants the use of the rule established in Bonewitz v. Bonewitz, 50 Ohio St., 373. “A party may waive his right to a jury trial by acts, as well as by words.”
We find no error, and the judgment is affirmed.

Judgment affirmed.

Shauck, Crew, Summers, Spear and Davis, JJ-, concur.